UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| BLAIR KEAGY, ) <br> ) <br>    Plaintiff, ) <br> ) <br> v. ) <br> ) <br> HARRIS VENTURES, INC. d/b/a ) <br> STAFF ZONE, ) <br> ) <br>    Defendant. ) <br> _____) | Civil Action <br> File No.: _____ |

**COMPLAINT FOR DAMAGES**

Plaintiff, Ms. Blair Keagy, submits the following Complaint for Damages against Defendant Harris Ventures, Inc. d/b/a Staff Zone ("Staff Zone") showing the Court as follows:

**INTRODUCTION**

1.

This is an employment case arising from interference and retaliation against Ms. Keagy in violation of the Families First Coronavirus Response Act (FFCRA) and the Fair Labor Standards Act (FLSA). Plaintiff has filed an administrative charge with the Equal Employment Opportunity Commission and will amend her complaint to add charges under the Americans with Disabilities Act upon receipt

of a Notice of Right to Sue. Ms. Keagy began experiencing COVID-19 symptoms on or about March 17, 2020 and did not fully recover from her symptoms for nearly two months. During this early stage of the pandemic, testing was difficult to obtain and medical advice was unclear. Ms. Keagy requested leave and reasonable accommodations numerous times throughout her illness only to be disparaged to her co-workers, invasively questioned about her medical condition, and eventually terminated in retaliation for asserting her rights under federal law.

2.

Plaintiff asserts claims for interference and retaliation in violation of the FMLA, the FLSA, and the FFCRA. She seeks back pay and the lost economic benefits of her employment, liquidated damages, compensatory and punitive damages, reasonable attorney's fees and costs of litigation, and all other relief this Court may deem just.

## JURISDICTION AND VENUE

3.

Plaintiff's claims present federal questions over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a), and 29 U.S.C. § 2617(2).

4.

The violations of Plaintiff's rights occurred in the Middle District of Georgia. Venue is proper under 28 U.S.C. § 1391(b) and (c), as a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in Staff Zone's office in Columbus, Georgia.

## PARTIES

5.

Plaintiff Blair Keagy currently resides in Lee County, Alabama. She subjects herself to the jurisdiction of this Court.

6.

Defendant Staff Zone is a domestic corporation registered to do business in the state of Georgia and is subject to the jurisdiction of this Court. Staff Zone may be served with process by personal service upon its registered agent for service of process, Matthew Anderson at 863 Holcomb Bridge Road, Roswell, GA 30076.

## FACTS

7.

Ms. Keagy has an immunodeficiency disorder that heightens her risk to illnesses like COVID-19.

8.

Ms. Keagy began working for Staff Zone on or about January 27, 2020 as a Sales Manager.

9.

Around this time, news reports of a novel coronavirus—later named SARS-COV-2—began to be reported. It was widely understood that this coronavirus could present major challenges for public health and disrupt daily life, including workplace interactions, in the coming months. The extent of this possible disruption was unknown at the time.

10.

As part of her job, Ms. Keagy closely interacted with other employees in an office setting. She often was within six feet of others and even rode in the same car with some employees.

11.

On March 11, 2020, the World Health Organization declared COVID-19, the disease caused by the coronavirus, a global pandemic.

12.

On or about March 17, 2020, Ms. Keagy began to experience symptoms associated with COVID-19 including a high fever, congestion, runny nose, coughing, sneezing, aching, and headaches.

13.

Also on or about March 17, 2020, Ms. Keagy called her primary care physician, Dr. William Whitten, and made an appointment to see Dr. Whitten that afternoon. Ms. Keagy also called General Sales Manager Michael Lolley to tell him about her situation. Lolley asked Ms. Keagy a series of questions regarding her symptoms, why she needed to go to the doctor, and about medications that she took.

14.

On or about March 18, 2020, Ms. Keagy called Office Manager Carmen Qualls. Qualls noticed that Ms. Keagy was sick and sounded awful. Qualls advised Ms. Keagy to call Lolley.

15.

Ms. Keagy called Lolley per Qualls' advice. Lolley told Ms. Keagy that she should not report to work due to her illness and the possibility of her having

COVID-19. Lolley asked Ms. Keagy about her symptoms and the medications she took.

16.

After his conversation with Ms. Keagy, Lolley told Qualls that Ms. Keagy was sick and went into detail about her symptoms and the medications that Ms. Keagy takes.

17.

Neither Lolley nor Qualls notified other relevant Staff Zone personnel of the possibility that Ms. Keagy had COVID-19 while she was working or that she would be out because of her illness.

18.

Also on March 18, 2020, Ms. Keagy made a follow-up appointment with Dr. Whitten's office but they refused to see her in the office because of the possibility of her having COVID-19. Dr. Whitten's office advised Ms. Keagy to contact the East Alabama Medical Center ("EAMC") for COVID-19 testing. Ms. Keagy did so and left a message.

19.

Ms. Keagy called Senior Human Resources Generalist Erica Williams and left a voicemail to provide an update saying that she was sick and attempting to get

a COVID-19 test.

20.

On March 19, 2020, EAMC returned Ms. Keagy's call, placed her on the COVID-19 test list, and advised her to self-quarantine until she was able to get tested.

21.

Also on March 19, 2020, Ms. Keagy received an email from Vice President of Staff Zone Matt Anderson, a call from Director of Sales Amanda Albert, and a call from General Manager Brenda Hitz. These communications inquired as to why Ms. Keagy had no activity in Staff Zone's system. Ms. Keagy called Albert back and stated that she was extremely ill and unable to work. Albert said that she was unaware of Ms. Keagy's illness and told her to "feel better."

22.

Over the next few days, Ms. Keagy continued to communicate with Lolley regarding the difficulties of scheduling her COVID-19 test due to heightened demand and shortage of tests. Lolley continued to question Ms. Keagy about the medications that she was taking. He also told other people at the Staff Zone office that he did not believe Ms. Keagy was truly ill.

23.

On March 20, 2020, Williams—who was now working remotely due to COVID-19—told Ms. Keagy that she had not received the March 17 voicemail. Williams also said that Lolley had not told her that Ms. Keagy was out due to illness. Williams asked that Ms. Keagy send an email to Lolley to state the events leading up to her illness and absence. Williams also informed Ms. Keagy that she was being placed on an unpaid leave of absence but assured her that her job would be protected in the interim.

24.

Around this time, Ms. Keagy received a call from Director of Safety Ryan Chism asking about her current status and the status of any testing.

25.

On April 1, 2020, Staff Zone grounded all Sales Managers and advised them to work from home. Sales managers were instructed to work 20 hours per week. They were also informed that their pay would be cut by 50%.

26.

Although Ms. Keagy was on unpaid leave and still suffering from COVID-19 symptoms. She asked Williams for permission to work from home due to concerns about her job security and financial well-being. This request was

approved, and Ms. Keagy began working from home on or around April 1, 2020.

27.

Ms. Keagy continued calling EAMC to see if testing was available. She finally was tested for COVID-19 on April 20, 2020. Under the guidance of her physician and CDC guidelines, she was advised to remain self-quarantined pending her results.

28.

Ms. Keagy informed Lolley of her test and the quarantine advice after she was tested. Lolley admonished Ms. Keagy for not being concerned enough with how she was being perceived and what her coworkers thought of her. Ms. Keagy responded that she was not doing any of this intentionally but was abiding by the guidance of healthcare professionals.

29.

On April 24, 2020, Ms. Keagy learned that the results of her COVID-19 test were negative. However, she still had a persistent fever and was experiencing other symptoms. Ms. Keagy's husband, who lives in the same house, was also experiencing symptoms. In light of this, EAMC advised her to remain quarantined.

30.

Ms. Keagy scheduled a follow-up appointment with Dr. Whitten's office for

April 29, 2020.

31.

Ms. Keagy informed Lolley of the results of her test and the recommendation to remain quarantined. Lolley made disparaging statements about her to co-workers suggesting that she was lying about her illness to avoid working. Lolley also shared personal medical information about Ms. Keagy to co-workers.

32.

Lolley pressured Ms. Keagy to return to work and participate in "ride-alongs" (in which she would ride in the same vehicle with co-workers) despite the recommendation that she remain quarantined while she still exhibited symptoms.

33.

Ms. Keagy complained to Williams about Lolley's inappropriate conduct with respect to her health issues and disclosure of her confidential medical information. Williams did not prepare a formal complaint or conduct an investigation; however, she subsequently sent an email to the General Managers cautioning against this inappropriate behavior and expressing concerns regarding legal liability.

34.

On April 27, 2020, Staff Zone notified all employees that they would be

resuming in-person operations effective May 1, 2020.

35.

During Mrs. Keagy's follow-up appointment with her physician on April 29, 2020, she was instructed to remain quarantined in light of the fact that she was still exhibiting symptoms and some COVID-19 tests had generated false negative results.

36.

Ms. Keagy called Williams immediately after her follow-up appointment on April 29, 2020. Ms. Keagy revealed that she also had an immunodeficiency disorder that heightened her risk for COVID-19 complications and requested additional time working from home to recover. In response, Williams advised Ms. Keagy that she would be opening an unemployment claim on Ms. Keagy's behalf and backdating it to April 25, 2020.

37.

When Ms. Keagy requested further clarification from Williams regarding her request to work from home until she stopped exhibiting COVID-19 symptoms, Williams informed her that she was terminated, effective immediately.

38.

Staff Zone did not pay Ms. Keagy through the last day of her employment, which was April 30, 2020.

39.

Because Staff Zone backdated her date of termination to April 25, 2020, she was deemed ineligible to collect unemployment benefits for the period from April 25, 2020 through May 10, 2020.

## COUNT I
## Interference Under the FFCRA

40.

All preceding paragraphs are incorporated herein by reference.

41.

Under the FFCRA, an eligible employer is required to provide an eligible employee two weeks of paid sick leave at the employee's regular rate of pay where the employee is unable to work because the employee is quarantined (pursuant to Federal, State, or local government order or advice of a health care provider), and/or experiencing COVID-19 symptoms and seeking a medical diagnosis. After the initial two weeks, an employer is required to provide the employee up to 10 weeks of additional leave at 2/3 their regular rate of pay. *Families First Coronavirus Response Act*, Pub.L. No. 116-127, 134 Stat. 178 (2020), Sec. 5102.

42.

Staff Zone has more than 50 employees but fewer than 500.

43.

Staff Zone interfered with Ms. Keagy's rights as provided by the FFCRA when it denied her request to take protected leave so that she could remain quarantined under the advice of her physician.

44.

Ms. Keagy is entitled to recover the full amount of the benefits as provided for under the FFCRA.

45.

Defendants undertook their unlawful conduct intentionally and maliciously with respect to Plaintiff and her federally protected rights, entitling Plaintiff to recover compensatory and punitive damages against them.

46.

Defendants' actions were willful, wanton, and intentionally directed to harm Plaintiff.

47.

Defendants' actions were taken with reckless disregard for the probable consequences of their actions.

48.

As a direct and proximate result of the Defendants' actions, Plaintiff has

suffered damages including lost wages, emotional distress, inconvenience, loss of benefits, humiliation, and other indignities.

## COUNT II
## FLSA Retaliation

49.

All preceding paragraphs are incorporated herein by reference.

50.

Retaliation for asserting rights under the FFCRA violates the FLSA.

51.

Ms. Keagy asserted her rights under the FFCRA by requesting to take or remain on protected leave so that she could remain quarantined under the advice of her physician.

52.

Ms. Keagy was terminated immediately after making this request.

53.

Because of Staff Zone's violation of the FLSA, Ms. Keagy is entitled to monetary relief including, but not limited to, back pay and other lost economic benefits of employment, liquidated damages, reinstatement or front pay in lieu of reinstatement, and reasonable attorney's fees and costs of litigation.

## COUNT III – FMLA INTERFERENCE

54.

All preceding paragraphs are incorporated herein by reference.

55.

Staff Zone interfered with Ms. Keagy's rights under the FMLA when it denied her request to remain on leave to recover from the serious health condition of COVID-19.

56.

Ms. Keagy notified Staff Zone of her condition when she mentioned her COVID-19 symptoms.

57.

Rather than hold her position open during the duration of her condition, Staff Zone terminated her in violation of her rights under the FMLA.

58.

Ms. Keagy is entitled to monetary relief including, but not limited to, back pay and other lost economic benefits of employment, liquidated damages, reinstatement or front pay in lieu of reinstatement, and reasonable attorney's fees and costs of litigation.

## COUNT IV – FMLA RETALIATION

59.

All preceding paragraphs are incorporated herein by reference

60.

Ms. Keagy asserted her rights under the FMLA by requesting to take protected leave so that she could remain quarantined under the advice of her physician

61.

Ms. Keagy was terminated immediately after making this request.

62.

Because of Staff Zone's violation of the FMLA, Ms. Keagy is entitled to monetary relief including, but not limited to, back pay and other lost economic benefits of employment, liquidated damages, reinstatement or front pay in lieu of reinstatement, and reasonable attorney's fees and costs of litigation

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a **TRIAL BY JURY** and that the following relief be granted:

    A.    That this Court take jurisdiction of this matter;

    B.    That process be served;

    C.    That Plaintiff be awarded a declaratory judgment that Defendants

violated the federal statutes listed above;

    D.    That the Court award Plaintiff back pay and lost economic benefits, plus interest, and front pay in an amount to be determined at the trial of this case;

    E.    That the Court award Plaintiff liquidated damages in an amount equal to her back pay and lost economic benefits of her employment with Defendant;

    F.    That the Court award compensatory damages in an amount to be determined by the trier of fact;

    G.    That the Court award Plaintiff punitive damages against Defendant;

    H.    That the Court award Plaintiff her costs in this action and reasonable attorneys' fees; and

    I.    That the Court grant such additional relief as the Court deems proper and just.

Respectfully submitted this 28th day of September, 2021.

                        **BUCKLEY BEAL, LLP**

                By:    */s/ Edward D. Buckley*
                        Edward D. Buckley
                        Georgia Bar No. 092750
                        edbuckley@buckleybeal.com
                        Joseph Quattlebaum
                        Georgia Bar No. 319971
                        jquattlebaum@buckleybeal.com
                        600 Peachtree Street NE
                        Suite 3900

Atlanta, GA  30308
Telephone: (404) 781-1100
Facsimile:  (404) 781-1101
*Counsel for Plaintiff*